Good morning. I'm Lamar Peckham for the petitioner. I'd just like to make two points this morning. And one is that both points apply to this principle, which is that the government should be held to their pleadings when they file them with the immigration court. In this case, the notice to appear was defective. I believe the proceedings were defective for the same reason. No one has disputed that the crimes which were charged in the notice to appear, that those crimes did not establish the inadmissibility that was charged in the notice of the I-261, the additional charges that were filed. So that's not an issue. The issue is whether the government could go beyond those pleadings and introduce additional evidence that doesn't, didn't relate to that, to the facts of the convictions. What I've argued so far is that this was a violation of the regulations of the Department of Homeland Security. But, in fact, it's more than that. It's more than just a violation of regulation. I also pointed out that there's a statute in the Immigration and Nationality Act that requires that the pleadings state the acts or conduct which are alleged to be in violation of the law. The first charge in the pleadings, the first charge was that he would be deported for illegal entry. They could have deported him just for that. Okay. Then he asks for relief on the basis that he would like an adjustment of status. And the government, in answer to that, says, well, he's not eligible for that because that's pre-dermitted because he committed another act. What's wrong with the government introducing into defense against your claim? Well, there may be other ways for the government to approach the issue of whether his application for adjustment should be pre-dermitted. But the way they did approach it was to file a new pleading. Pleadings are required under certain circumstances, and maybe they aren't under others. But in this case, there were pleadings filed. The I-261 was filed. And therefore, under the regulations, under the statute, he was on notice that these were the facts that were going to be proven in order to show that he was inadmissible and not eligible for adjustment of status. Mr. Lara-Rivas disputed that those convictions could be grounds of inadmissibility. And, well, it's never been shown that anything but that was true. But pleadings are not just a matter of regulation and statute. They're also, I believe, and the Court should consider in this case, that there's a constitutional aspect to it. Now, in the government's brief, one of their objections to this line of analysis was that there's no prejudice to him. And I think that's an important point. What's the prejudice? Well, I believe that the prejudice, though I don't think this Court's ever directly addressed it in this context, the prejudice is the same that the Second Circuit has determined, which is that there is no prejudice necessary when the violation is based on a constitutional right. And they in, let's, let me just look at the citation here. It's Montia, the Montia case, 926 F. 2nd, 162, a 1991 case. They say, they said, no prejudice needs to be shown when the agency violated its own regulations, which concern, pardon me, concern a fundamental right derived from Constitution or statute. There, it was the right to counsel under the Sixth Amendment as applied by the Fifth Amendment due process clause. In this case, the same amendments to the Constitution apply. And the Sixth Amendment has a right to be advised of the notice or to, pardon me, the nature and cause of the charges against him. That's what the statute does. That's what the regulations do. Or in this case, they were defective. They did not, in fact, advise him of the nature and cause of the charges against him. In fact, he argued consistently through the whole proceeding that that was so, that the pleading was defective. And then let me get to one other point. Let me come back to my question to you. Please. The first charge was sufficient to find him deportable. At that point, he introduces a new element into the case, which he has a right to do. He has a right to show that he is eligible for adjustment of status. At that point, the government has to rebut that by showing that he is not eligible for adjustment of status because he's committed this other offense. That offense doesn't have to be a ground for deportation, doesn't have to be part of the reasons for deportation. All they have to do is show that. And if they show that, I don't see the problem. Well, here's what — how I respond to that, Your Honor. They — they did not have the burden to prove that he was inadmissible, actually. He had the burden to prove that he was admissible for adjustment of status.  Right. The time at which he stated what relief he would be seeking was the same time that he pled to the notice to appear. I mean, it wasn't that there was some other time. At that moment, in fact, the government could have stated what its objection was if they had one. But it was his — his burden to prove that he was — that he was admissible. And in a different context, in Sandoval Lua, that this Court ruled that when the issue is admissibility and the government offers conviction documents which they state are proof of the inadmissibility, and if they aren't conclusive, if they are equivocal, the defendant — well, not the defendant, the petitioner, the respondent in immigration proceedings, he's met his burden to prove that he's admissible. That's all he has to do. In this case, you know, I don't deny that the government could have done something different than they did. That's often the case. They have prosecutorial discretion. But when they do file a pleading, it appears to me that they should be bound by that regulations, not just by the statute, but by the Constitution as well. Thank you. I'll reserve the rest of my time, if I may. Thank you, counsel. Good morning, Your Honors. John Cunningham from the Department of Justice. Judge Noonan, Judge Fischer, it's nice to see you again. Judge Reinhardt, good morning. Good morning. There's no real dispute regarding the conduct of Mr. Laura Rivas in the United States. There's no dispute that he bought a passport that didn't belong to him and then for three years moved about the United States using that passport for various purposes, getting — including getting a driver's license here in California. I don't think there's any real dispute that if the evidence of that conduct sticks, that he is inadmissible under Section 212A of 6C2, and that if that charge and that finding by the immigration judge that he is inadmissible sticks, then he's therefore ineligible for adjustment of status. The question is, does the evidence stick? The question is, did the immigration judge err in allowing the evidence of Mr. Laura Rivas' conduct into the record, and did he further err in relying on that evidence to find Mr. Laura Rivas inadmissible? I think there are two threads here, and I've — I think Mr. Peckham's argument this morning touches upon both threads, and I think it might be helpful to you if I try to discuss these threads separately. They are tangled up at the end, but I think there are two different points here. The first is whether, as a matter of law, the immigration judge erred in going beneath the record of the conviction, the conviction here in the Northern District of California for unlawful possession of a false identification document, to find out what really happened, to look at the conduct that underlay the conviction. In his brief, the Petitioner cited a board decision that seemed to make the argument that, yes, there is a board precedent that forbids this. And our brief, unfortunately, did not address that decision. The decision that the Petitioner relied upon was Pachardo's suffering. Our brief should have addressed that decision, at least acknowledged it. It didn't. It wasn't as helpful to you as it should have been. I apologize to the Court for that oversight. But there is another board decision, which was also not cited in our brief, that makes it clear that there's a distinction between these kinds of cases. I will give you a 28-J letter when I get back to Washington. I found this case when I was preparing for this argument on Saturday evening. Mr. Peckham obviously hasn't seen it either. I will give you a 28-J letter. I'll give you the citation. You'll see the point I'm trying to make. And Mr. Peckham, of course, will have an opportunity to address it. The board decision that we can rely upon is Cervantes cited at 22 INN decision at page 560. Here's the distinction. When the ground of removability or deportability rests on a conviction, then the board and the immigration judges may not go beneath the conviction to find out what happened. The law makes that clear. The case law makes that clear. But when you are talking about a ground of removability under the Immigration Act that is conduct-based, that does not require a conviction. It is permissible to go beneath the conviction and find out what happened. And that's what we have here. And the board makes that point in its decision in the Cervantes-Gonzalez case. And in Section 212A6C2, there is no requirement of a conviction. And the board said in Cervantes-Gonzalez that when we are looking at that kind of a provision, it's permissible to go beneath the conviction and the conviction documents to find out what happened. Of course, that's only my first point. My second point is, is that a good result for the board? Did the board reach the right result in rendering that conclusion? And I think the answer is yes, because the underlying reason why the board and immigration judges ought not to go beneath a conviction when we're talking about a ground of removability that's based on a conviction is that the board and immigration judges should not be in the basis of reexamining and perhaps even readjudicating the guilt or innocence of the defendant alien. They shouldn't be looking at the criminal conviction again. But when you're talking about a ground of removability that's conduct-based, that underlying concern does not arise. So I think with respect to the first thread, we're in good shape. The board did not commit an error of law in going beneath the defendant's conviction in 2000 to find out what happened and in looking at that conduct. The second thread is whether the charging document, and this I think has been the main emphasis of Mr. Peckham's remarks this morning, whether the charging document was deficient from the beginning because it wasn't specific enough, and therefore nothing that was adduced at the hearing should have been allowed in. I'll be the first to say, or maybe the second to say, that the charging document was not as artfully written as it should have been. But the question is, is that an incurable lack of notice, or can it be cured? Can the immigration judge fashion a hearing that gives the alien who is charged the way this Mr. Larrivas was charged in this case a chance to, and I think I'll borrow a phrase from the second case you heard this morning, a chance to mount his defense? And if you look, the record in this case makes it clear that Mr. Larrivas had every opportunity to mount his defense. There was no unfair surprise here. You will not see in this record protests from Mr. Larrivas or from Mr. Peckham. We don't know what this is all about. We could have brought in witnesses to defend ourselves here, and we haven't been given an opportunity to do that. We have no idea where these documents are coming from. We have no idea what these charges are about. We have not been given a fair chance to mount our defense. You won't see that. What you will see is agreements from Mr. Peckham and the INS attorney as to the content of the documents. The documents that the INS relied upon were known to Mr. Larrivas weeks and weeks before the merits hearing which occurred in May of 2003. You will see that the documents were admitted into evidence by the immigration judge without objection from Mr. Peckham. Roughly, that's roughly pages 160 to 180 of the record. The detective, the California detective who had investigated Mr. Larrivas here was brought in as a witness by the INS, made available for cross-examination. He was cross-examined by Mr. Peckham. And, of course, most damning of all, Mr. Larrivas himself testified at the hearing and said three times, pages 124 through 126 of the record, yes, I used that passport when I applied as identification purposes, when I applied for a California driver's license. And, of course, that conduct fits precisely within the ground of inadmissibility Kennedy, may I ask you a question about the percentage here? If you want to contest the admissibility, does that have to be in your charge, or can you just bring in evidence at the time of the hearing? The second, Your Honor. I think that was the thrust of your questions to Mr. Peckham. That is standard practice. If an alien seeks adjustment of status, your decision in Sandoval Lua makes it clear that the burden is on him to prove that he is admissible. If you make that claim, I'm admissible to the United States, you open the door to impeachment evidence that can be brought in by the government to show that you are not inadmissible. Here's documents, and we've got a detective from California ready to testify. In Judge Thomas's concurring opinion in Sandoval Lua went a slightly different way. He thought that the burden shifted to the government to prove inadmissibility. And in that case, the result's the same. The government can bring in this kind of evidence as, on a direct basis, part of its burden to prove inadmissibility. Either way, there's no requirement that the an actual charge of inadmissibility be brought. As long as both sides get a fair opportunity to examine the evidence and cross-examine and examine as they see fit, the hearing is good, and the result reached by the immigration judge admissible or inadmissible is a fair one. Here, though, if the question is, well, was the charging document so poisonously flawed that everything that happened after it must be tossed out, I think the answer is it can be cured. The lack of notice, whatever lack of notice existed at the time of the charging document, can be cured if the hearing was a fair one. Kennedy. What? Excuse me, Your Honor. The lack of notice of what? Well, if you accept my colleague's premise that the charging document that the INS, the amended charge that the INS brought in of inadmissibility, did not give Mr. Lauerevis fair notice of the precise acts that constituted inadmissibility, there's no dispute that the language of the statute that he was actually convicted under contained no reference to false representation of U.S. citizenship or using that false representation for a purpose or benefit under a Federal or State law. There's no dispute about that. So if the complaint is, well, that charge, yes, I admit to that charge, I was so convicted, but so what, the – and if the premise is, well, that doesn't give me fair notice of why you think on the basis of that charge I'm inadmissible under 212a6c2, that can be cured if the hearing is done right. And here, the hearing was done right. Well, that's – now I'm less clear than I was before about what you are required to do in the charge about the subject of admissibility. I couldn't quite hear your question, Your Honor. What are you required to do in your charge? As far as deportability, all you needed in the charge was count one. What is the requirement as to your response to admissibility? What are you required to have in the charge about that? Well, I think that you are required, I think, as a basic, as an irreducible basis, you're required to point to a fact that you think triggers the charge, and you are required to be specific about what grounds admissibility – It doesn't have to be a charge. I'm assuming you're not deporting him on the charge. You deport him only on the first charge. Oh, I see. You're – we're now in the other – the other process where it's – What I'm trying to find out is what is the relationship between flaws in the charge, as long as you have one good count, and the question of whether you can rebut a claim of entitlement to adjustment of status. Okay. I think I understand Your Honor's question. Can you get to a – can you get to a bottom line where the immigration judge says, in effect, you are subject to removal because you entered without inspection. You applied for adjustment of status. Yes. I hereby find that you are ineligible for adjustment of status because the INS, the DHS now, has brought in evidence that leads me to conclude that you are inadmissible under A262, and therefore, you are ineligible for adjustment of status. Yes. I'm trying to find out whether any of that has to be in the charge. No, I don't think so. No. I mean, there's still fair notice. The evidence – as long as the evidence that is brought in is brought in fairly, as long as there's no unfair surprise, as long as there's an opportunity to cross-examine adverse witnesses, as long as everyone understands what evidence the government is relying upon, in that scenario, I don't – there is no requirement that an actual, separate, specific charge of removability be brought. So my time is over, and if there are no further questions, I thank the Court for its attention. Thank you. Thank you very much. I'll waive the balance of my time. Thank you both. Thank you.
judges: Reinhardt, Noonan, Fisher